392 S.E.2d 216

**STATE of West Virginia**

v.

**Phillip PORTER.**

No. 18874.

Supreme Court of Appeals of
West Virginia.

March 22, 1990.

John F. Cyrus, Lockwood, Egnor, Gardner & Cyrus, Huntington, for Phillip Porter.

Roger Tompkins, Atty. Gen., Richard M. Riffe, Senior Asst. Atty. Gen., Charleston, for State.

McHUGH, Justice:

This case is before the Court upon the appeal of Phillip Porter. The appellant was convicted of first degree murder in the Circuit Court of Cabell County. We have reviewed the petition for appeal, all matters of record, and briefs of the parties. For reasons set forth in this opinion, this case is remanded to the circuit court for further determination consistent with this opinion.

I

During the early morning hours of August 28, 1980, Mark Pelfry and his half-brother, Ralph Leo Ball, Jr. (also known as and hereinafter "Roger Pelfry"), were shot to death. The victims were asleep in a van in Guyandotte. Ralph Leo Ball, Sr., the father of the victims, was asleep in a car next to the van.

In January, 1982, the appellant was indicted on two counts of first degree murder. The first count charged the appellant with the murder of Mark Pelfry and the second count charged the appellant with the murder of Roger Pelfry.

In March, 1982, the appellant moved for a severance of the counts in the indictment. The appellant's motion was granted.

The appellant was tried for the first count of the indictment, the murder of Mark Pelfry, and was acquitted in March, 1982.

In September, 1982, the appellant moved to dismiss the second count of the indictment, the murder of Roger Pelfry, as violative of the double jeopardy prohibition of the *United States Constitution*.[1] This motion was denied by the circuit court. In May, 1983, this Court refused a writ of prohibition barring trial of the second count.

The appellant was tried for the murder of Roger Pelfry in August, 1983. The jury was unable to reach a verdict. The circuit court then found that manifest necessity existed and declared a mistrial.

A second trial for the murder of Roger Pelfry commenced in January, 1984. Due to improper questioning of a witness for the State by defense counsel, the State moved for a mistrial. The State withdrew its motion for a mistrial and then renewed it. Again, opining that manifest necessity existed, the circuit court declared a mistrial.

A third trial for the murder of Roger Pelfry commenced in August, 1985. The appellant was *found guilty of first degree murder*, with a recommendation of mercy.

During the third trial, it was established that the Pelfry brothers were having a longstanding feud with a group known as the "Altizer boys."

It was also testified to at trial that initially the "Altizer boys" were suspects, but, because they were cleared through the use of polygraph tests, the State did not further pursue this theory. Officer Brooks and Officer Gill of the Huntington Police Department testified as to the results of these polygraph tests during the State's case-in-chief. Additionally, during its closing argument, the State mentioned that the "Altizer boys" were cleared by the use of polygraph tests.[2]

The State also presented, by reading, the testimony of James Edward Stover, an acquaintance of the appellant, from the March, 1982 trial, in which the appellant was acquitted of the murder of Mark Pelfry. This testimony revealed a statement made by the appellant to Stover that the appellant shot the Pelfry brothers. Stover testified at the trial upon which this appeal is based that he did not remember testifying previously, and that he may have been drunk at the time he previously testified. The appellant did not object to this prior testimony being read.

The State also presented testimony of Deputy Michael A. Clark, who worked in the recreational yard at the Cabell County Jail. Deputy Clark testified that at one time, before the appellant's trial, he said to the appellant: "When it is all over with, if you don't care, tell me what really happened." The appellant's response to Deputy Clark was that he committed the murders. The circuit court held an *in camera* hearing and determined that the appellant's statements to Deputy Clark were made freely and voluntarily. The appellant objected to the admission of this evidence.

The State also presented the testimony of James Lovejoy. Lovejoy testified that the appellant admitted killing the Pelfry brothers.

Other witnesses for the State also testified to matters that were corroborated by each other's testimony, yet, contradicted by the testimony of the appellant, who took the stand.

## II

The primary issue in this appeal is the appellant's contention that the State violat-

---

1. The fifth amendment to the *United States Constitution* provides, in pertinent part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]" Article III, section 5 of the *West Virginia Constitution* contains a similar provision. The federal double jeopardy clause is applicable to state court proceedings. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

2. As will be discussed in section III of this opinion, the appellant only objected to some of the testimony concerning the use of polygraph tests.

ed principles of collateral estoppel, as embodied in the fifth amendment's guarantee against double jeopardy, by trying the appellant for the murder of Roger Pelfry following the appellant's acquittal in the trial for the murder of Mark Pelfry.

The United States Supreme Court, in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), recognized that the principle of collateral estoppel is embodied in the fifth amendment's double jeopardy clause. The petitioner in *Ashe* was one of four defendants charged with the armed robbery of six men who were engaged in a game of poker. The petitioner was charged on six counts of armed robbery, one count for each victim. The petitioner was then tried for the armed robbery of one of the victims. The prosecution's case consisted of the testimony of four of the six victims, including the victim in the count for which the petitioner was tried. Two of these witnesses testified that there were only three robbers, not four, and these two witnesses could not even identify the petitioner Ashe. Another witness could only identify the petitioner by voice, and still another, only by size and actions. The weaknesses in the prosecution's case resulted in an acquittal. The jury found that the prosecution's evidence was insufficient. Thereafter, the petitioner was tried again, this time for the armed robbery of another victim. The witnesses in the second trial were mostly the same as those in the first trial, but their testimony on the issue of the petitioner's identity was substantially stronger. Moreover, the prosecution at the second trial did not call one of the witnesses from the first trial, whose testimony on the identity issue was very weak at the first trial. The jury in the second trial found the petitioner guilty. The petitioner sought habeas corpus relief, based upon a double jeopardy claim. The Supreme Court, in an opinion by Justice Stewart, held that because "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers," and "the jury by its verdict found that he had not" been one of the robbers, then collateral estoppel barred a subsequent prosecution. 397 U.S. at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476. In reaching this conclusion, the Supreme Court stated:

'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85 [, 37 S.Ct. 68, 61 L.Ed. 161 (1916) ]. As Mr. Justice Holmes put the matter in that case, 'It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.' 242 U.S., at 87 [, 37 S.Ct. at 69, 61 L.Ed. at 164]. As a rule of federal law, therefore, '[i]t is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case, either because of lack of "mutuality" or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases of the Government's evidence as a whole although not necessarily as to every link in the chain.' *United States v. Kramer,* 289 F.2d 909, 913 [ (2d Cir.1961) ].

*Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475 (footnote omitted).

However, before a reviewing court may determine whether collateral estoppel would bar a subsequent prosecution, that is to say, whether it can be determined that the first jury decided issues of fact in favor of the accused, the court must have before it the record of the first trial in order to compare it with the subsequent prosecutions.

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach

of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579[, 68 S.Ct. 237, 240, 92 L.Ed. 180, 184 (1948)]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

*Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76 (footnote omitted) (quoting Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions,* 74 Harv.L.Rev. 1, 38–39 (1960)).

The Supreme Court's decision in *Ashe* has been followed by state courts. *See, e.g., Prince v. State,* 431 So.2d 565, 568 (Ala.Crim.App.1982), *cert. denied,* 431 So.2d 568 (Ala.1983), *cert. denied,* 468 U.S. 1204, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984); *DeSacia v. State,* 469 P.2d 369, 380 (Alaska 1970); *In re Crow,* 4 Cal.3d 613, 623, 483 P.2d 1206, 1214, 94 Cal.Rptr. 254, 262 (1971) (en banc); *Spencer v. State,* 438 So.2d 864, 866 (Fla.Dist.Ct.App.1983); *State v. Ingenito,* 87 N.J. 204, 209, 432 A.2d 912, 914 (1981); *People v. Abbott,* 113 Misc.2d 766, 777, 449 N.Y.S.2d 853, 861 (Sup.Ct.1982); *State v. Thomas,* 61 Ohio St.2d 254, 260, 400 N.E.2d 897, 903, *cert.*

*denied,* 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980); *Commonwealth v. Zimmerman,* 498 Pa. 112, 117, 445 A.2d 92, 95 (1981); *Ex parte Robinson,* 641 S.W.2d 552, 556 (Tex.Crim.App.1982); *State v. Spanbauer,* 108 Wis.2d 548, 550–51, 322 N.W.2d 511, 512 (Ct.App.1982).[3] *See also* 3 J. Cook, *Constitutional Rights of the Accused* § 23:9 (2d ed. 1986 & Supp.1988); 2 W. LaFave & J. Israel, *Criminal Procedure* § 17.4 (1984 & Supp.1989); 1 C. Torcia, *Wharton's Criminal Law* § 72 (14th ed. 1978 & Supp.1989); *see generally* annotation, *Modern Status of Doctrine of Res Judicata in Criminal Cases,* 9 A.L.R.3d 203 (1966 & Supp.1989).

■ Accordingly, we hold that the principle of collateral estoppel applies in a criminal case where an issue of ultimate fact has once been determined by a valid and final judgment. In such case, that issue may not again be litigated between the State and the defendant.

■ The appellant in this case contends that, like in *Ashe,* the only rationally conceivable issue in dispute before the jury in his (the appellant's) first trial, was the identity of the perpetrator. The appellant maintains that the jury decided: (1) that the two murders involved the same facts, including the same perpetrator, and (2) that the appellant was not the perpetrator. This contention may have merit, but we cannot so conclude from the record in this appeal. The record of the first trial has not been included as a part of the record in this case. Therefore, we will remand this case so that the circuit court, guided by the principles set forth in this case and based upon a review of the record in the first trial, may decide whether the issues of ultimate fact have once been determined by a valid and final judgment.[4]

---

**3.** The *Ashe* decision is often used in federal courts as well. *See, e.g., Abramson v. Griffin,* 693 F.2d 1009, 1011 (10th Cir.1982); *Benson v. Superior Court Department of Trial Court,* 663 F.2d 355, 359–60 (1st Cir.1981); *United States v. Bowman,* 609 F.2d 12, 17 (D.C.Cir.1979); *United States v. Nash,* 447 F.2d 1382, 1384–85 (4th Cir.1971); *United States v. Fusco,* 427 F.2d 361, 362 (7th Cir.1970).

**4.** The State contends that because the appellant successfully moved for a severance of the counts in the indictment, then the second trial should not be barred by double jeopardy principles. Syllabus point 2 of *State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980), states: "Where multiple homicides occur even though they are in close proximity of time, if they are not the result of a single volitive act of

## III

The appellant also raises as error the admission of certain evidence relating to the use of polygraph tests. Specifically, the appellant maintains that the solicitation, introduction, and admission of polygraph test results in this case constitute: (1) plain and prejudicial error on the part of the circuit court; (2) ineffective assistance of counsel; and (3) prosecutorial misconduct.

As pointed out in section I of this opinion, during its case-in-chief, the State established, through the direct testimony of Officers Brooks and Gill that the initial suspects, the "Altizer boys," were cleared as suspects. On direct examination, Officer Brooks testified as follows:

Q And during this investigation did you have many suspects?

A Yes.

Q And during the course of your investigation did you clear all those persons that were suspects from the initial time?

A Yes.

. . . .

Q In other words, you are not telling the jury you cleared the Altizer boys on your own decision, whim or fancy; is that right?

A No.

Trial Tr. 182, 200.

During *defense counsel's* recross examination, counsel for the appellant asked Officer Brooks why a particular "Altizer boy" was not charged, to which Officer Brooks replied that most of the "Altizer boys" were cleared by the use of polygraph tests. At this point, trial counsel for the appellant persisted, asking Officer Brooks about individual "Altizer boys," and whether each was cleared by the use of polygraph tests.

Officer Gill was then recalled by the State to testify. During direct examination by the State, Officer Gill confirmed what Officer Brooks had testified to during *defense counsel's* recross examination, that several "Altizer boys" were cleared by the use of polygraph tests. The State then asked Officer Gill if a particular "Altizer boy" had been cleared by the use of polygraph testing, and following an affirmative response by Officer Gill, defense counsel objected. The circuit court instructed the jury to disregard Officer Gill's answer. Trial counsel for the appellant then moved for a mistrial and the circuit court overruled trial counsel's motion.[5]

It is a rudimentary principle of our criminal jurisprudence that "[p]olygraph test results are not admissible in evidence in a criminal trial in this State." Syl. pt. 2, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979). However, against this fundamental rule, we have applied another well-established principle: "Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syl. pt. 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966).

In *State v. Acord*, 175 W.Va. 611, 336 S.E.2d 741 (1985), we affirmed a first degree sexual assault conviction, despite the remark made by a prosecution witness that he had passed a polygraph test, because, applying the holding set forth in syllabus point 18 of *Hamric*, the trial court instructed the jury to disregard the witness' re-

---

the defendant, they may be tried and punished separately under the double jeopardy clause of Article III, Section 5 of the West Virginia Constitution." Syllabus point 2, in part, of *State ex rel. Johnson v. Hamilton*, 164 W.Va. 682, 266 S.E.2d 125 (1980), states that "the defendant may move for severance of separate offenses and waive a future plea of double jeopardy, and if severance is granted by the Court, after showing of good cause for such severance, the defendant may be tried separately for each separate offense."

The issue in this case, however, is whether issues of ultimate fact have once been determined by a valid and final judgment.

5. During its closing argument, the State summarized the polygraph evidence which was introduced during the appellant's recross examination of Officer Brooks. Although there was no objection to the State's summation, it is clear that the prosecutor was merely restating what counsel for the appellant elicited during trial.

mark, thus curing any error which may have arisen.

■ Similarly, in this case, when the *State* elicited evidence regarding polygraph test results, during Officer Gill's testimony, the circuit court instructed the jury to disregard such evidence. The only other evidence of polygraph test results was introduced by the *appellant*. Not only was such evidence introduced by the appellant, it was also pursued by the appellant, as trial counsel went through individual "Altizer boys," inquiring as to whether each was cleared.[6]

Under these circumstances, while the evidence as to the polygraph tests was inadmissible, the admission thereof was not reversible error because the defendant was responsible for the admission of most of this evidence and because the circuit court's instruction cured the error of the admission of the polygraph evidence by the State.

■ The appellant, in asserting that trial counsel was ineffective, relies upon our decision in *Cannellas v. McKenzie*, 160 W.Va. 431, 236 S.E.2d 327 (1977), wherein we held that the defendant suffered from ineffective assistance of counsel because, among other things, counsel failed to move for a mistrial in spite of testimony regarding a lie detector.[7]

In this case, as indicated in note 6, *supra*, counsel for the appellant consciously pursued a line of questioning involving the use of polygraph tests as a trial strategy to obtain evidence implicating a person other than the appellant. *See State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 172, 342 S.E.2d 127, 137 (1986) (counsel's challenged conduct must be viewed from counsel's perspective at the time of trial) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674,

694 (1984)); *Acord v. Hedrick*, 176 W.Va. 154, 158, 342 S.E.2d 120, 123 (1986) (reviewing court will not apply "reasonably effective assistance" standard *in hindsight* to matters of trial strategy, tactics, or other arguable courses of action). Moreover, it is significant that trial counsel for the appellant did move for a mistrial at the only point in which the *State* elicited testimony regarding polygraph tests. We perceive no ineffective assistance of counsel.

Based upon our discussion immediately above, especially the fact that it was the *appellant* who introduced most of the evidence regarding polygraph tests, we conclude that there is no reversible error due to any prosecutorial misconduct in this case. *See* syl. pts. 3 and 4, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

IV

Finally, the appellant raises several other issues that are without merit.

The appellant contends that the circuit court committed reversible error by admitting into evidence the appellant's confession to Deputy Clark, the guard in the recreational yard at the Cabell County Jail. As pointed out in section I of this opinion, before the appellant's trial, Deputy Clark said to the appellant: "When it is all over with, if you don't care, tell me what really happened." The appellant's response was that he committed the murders.

The appellant contends that this confession was secured by the State in violation of the appellant's fifth amendment privilege against self-incrimination as set forth by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Our review of the record, however, clearly indicates that the appellant's response to

---

6. Apparently, trial counsel for the appellant pursued this line of inquiry to elicit testimony that one of the "Altizer boys" was not cleared through the use of polygraph testing. We therefore do not agree with the appellant's assertion that trial counsel for the appellant "rose to the bait" of Officer Brooks' testimony during direct examination by the State. Instead, the fact that trial counsel for the appellant inquired as to

whether each of the "Altizer boys" was cleared by the polygraph tests indicates that counsel's strategy was to obtain evidence which implicated one of the "Altizer boys."

7. We pointed out in note 4 of *Acord* that a mistrial is not automatic in any case where mention of a polygraph test is made.

Deputy Clark was given freely and voluntarily. Furthermore, there is nothing to indicate that this was an interrogation. Consequently, the appellant's statement was admissible. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. *See also* 2 J. Cook, *Constitutional Rights of the Accused* § 5:25 (2d ed. 1986 & Supp.1989).

The circuit court held an *in camera* hearing to determine the admissibility of the appellant's confession, and ruled that the confession was given freely and voluntarily.

■ In syllabus points 2 and 3 of *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978), this Court held:

2. It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review.

3. A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

Based upon the voluntariness of the appellant's confession, there was no abuse of discretion on the part of the circuit court in admitting the appellant's confession into evidence.

The appellant also contends that he was harmed by ineffective assistance of counsel, specifically by: (1) trial counsel's failure to object to the introduction of the testimony of James Edward Stover, an acquaintance of the appellant, from the March, 1982 trial, in which the appellant was acquitted of the murder of Mark Pelfry; and (2) trial counsel's failure to join in the State's motion for a mistrial during closing arguments.

■ The standard by which we determine whether or not a criminal defendant has suffered from ineffective assistance of counsel is set forth in syllabus point 22 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974): "One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence." We also held, in syllabus point 21 of *Thomas,* that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

The appellant maintains that trial counsel should have objected to Stover's prior testimony because Stover had no recollection of such testimony and Stover admitted that he had been drinking on the day he previously testified.

■ It is true that, generally, a proposed witness who is so intoxicated when it is sought to put him on the witness stand that he would not know what he was testifying to will be excluded from testifying. 81 Am.Jur.2d *Witnesses* § 544, at 545 (1976).

In *State v. Hall,* 464 So.2d 966 (La.Ct. App.1985), a Louisiana appeals court held that it was not reversible error for a trial court to allow the prosecution's chief witness to testify, even though the witness testified that he had been drinking on the morning of the trial. There, defense counsel objected, contending that the witness was intoxicated, and, therefore, should not be allowed to testify. In affirming the trial court's ruling which allowed the witness to testify, the appeals court held that because defense counsel was allowed to cross-examine the witness regarding his alcohol consumption, "[t]he jury, as finder of fact, was entitled to attach as much or as little weight to the testimony as it deemed appropriate." 464 So.2d at 969.

Similarly, in this case, trial counsel for the appellant cross-examined the witness Stover, in the presence of the jury, regarding his prior testimony:

Q  So, it is your testimony here in front of this jury that when you made the statement previously you were drunk, right?

. . . .

Q  Well, when you were cross examined at the last trial?

A  I was not saying I was drunk when I made the statement. I just don't remember making the statement.

Trial Tr. 283.

There is no evidence that Stover did not know what he was testifying to at the time he previously testified or that he was necessarily intoxicated at that time. He merely did not remember previously testifying. Trial counsel's strategy of cross-examining Stover in this regard, including the failure to object to Stover's testimony, clearly do not amount to ineffective assistance of counsel as set forth in *Thomas*.

The appellant contends that he again suffered from ineffective assistance of counsel during closing arguments, when the State moved for a mistrial and trial counsel for the appellant failed to join such motion.

Specifically, the appellant contends that trial counsel's frustration with the case was the reason trial counsel did not join the State's motion for a mistrial. We have held that "[w]hen in a criminal case, defense counsel, reinforced by the court, maintains a reasonable, good faith belief that error has occurred warranting mistrial, but fails to move for mistrial solely because of personal economic motivation, the defendant has been denied effective assistance of counsel." Syl., *State v. Pelfrey*, 163 W.Va. 408, 256 S.E.2d 438 (1979).

In this case, however, it was a remark made by counsel for the appellant, during closing arguments, which provoked the prosecutor to move for a mistrial, namely, that "this case has been tried before, maybe three times." Following the State's motion and a lengthy discussion out of the jury's presence, the State withdrew its motion for a mistrial.

Based upon the record before us, it is clear that the *State* and not the appellant would be prejudiced by trial counsel's remark, and, thus, the *State* moved for a mistrial. It is also clear from the record that trial counsel's remark merely reflected much of what was testified to during the trial. Accordingly, the State withdrew its motion. There is no evidence to suggest that the appellant was prejudiced by trial counsel's inaction or that trial counsel's inaction meets the *Thomas* standard which would deem his performance ineffective.

V

Based upon the foregoing, this case is remanded to the Circuit Court of Cabell County for further proceedings consistent with this opinion.

Remanded.