534 S.E.2d 740

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Avery D. LEWIS, Defendant Below, Appellant.**

No. 26560.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2000.

Decided June 23, 2000.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

S. Mason Preston, Esquire, Preston & Weese, Lewisburg, West Virginia, Attorney for Appellant.

PER CURIAM:

This is an appeal by Avery Desmond Lewis from an order of the Circuit Court of Monroe County sentencing him to from two to ten years in the State Penitentiary for malicious wounding. On appeal, he claims that the trial court should have granted him a mistrial because mention of the fact that a witness had taken a polygraph examination was made during trial. He also claims that the State failed to provide him with a copy of the statement made by the witness during that examination. The appellant further asserts that the evidence adduced during trial was insufficient to support a jury finding that he used a weapon to injure the victim and, that consequently, there was insufficient evidence to support the ultimate verdict in the case. In conjunction with this, the appellant claims that the trial court erred in giving an instruction regarding the inference of malice which may arise from the use of a deadly weapon.

## I.

### FACTS

The evidence in this case shows that on the night of October 24, 1997, the appellant became involved in a fight with Henry Wright in the parking lot of the Cash Market in Union, West Virginia. During the fight, Wright sustained severe lacerations to the left side of his face and later drove himself to the emergency room at the Greenbrier Valley Hospital. When he arrived at the hospital, he was hemorrhaging severely. He had wounds which were approximately six inches long and which appeared to go to the bone.

Dr. Ray Jones, the surgeon who treated Wright, found that Wright's auricular and temporal arteries had been lacerated, that the maxillary muscle to the jaw had been cut and that there was possible nerve damage. Dr. Jones observed no bruising and concluded that a sharp object, such as a knife, had caused the injuries because a blunt object would have crushed the tissue surrounding the wounds. Since a question arose as to whether the appellant's fingernails could have caused the lacerations, Dr. Jones concluded: "The lacerations made on Mr. Wright were not made by a fingernail."

The appellant was subsequently indicted for malicious wounding, and a jury trial was conducted on May 5-6, 1998. At the conclusion of that trial, the jury found the appellant guilty of the charge of malicious assault.

In the course of investigating the case, the State had questioned the appellant's cousin, Kimberly Goins, who was present at the time of the fight and who was present with the appellant after the fight. The State had also administered a polygraph examination to Ms. Goins. During the polygraph examination, Ms. Goins testified that she saw a little silver knife in the appellant's hand at an apartment after the fight. She also testified that the appellant had stated that he had "cut" the victim.

At the appellant's trial, the prosecution asked no questions regarding the polygraph exam administered to Ms. Goins. The fact that it had been administered was raised during the cross-examination of Ms. Goins by the appellant's attorney. Specifically, during the cross-examination, defense counsel asked Ms. Goins if any type of immunity had been offered to her for her testimony. The testimony proceeded as follows:

A. They was just saying that—they just told me if I didn't tell the truth that we both could be in trouble, like because somebody cut him. One of us had to cut him.

Q. And so basically, if you don't come and tell something that the police wanted, then you could be charged, is that what you interpret that to be?

A. That we both could be charged.

Q. And that would include you, wouldn't it?

A. Yes.

Q. Whereas, if you came and testified against Avery, they wouldn't bring criminal charges against you, would they?

A. Just if I told the truth about what happened.

Q. How are they supposed to know what the truth is? You gave one statement here that doesn't tell anything about this knife.

MR. MOHLER [Prosecutor]: Objection, argumentative.

THE COURT: Overruled.

BY MR. DETCH [Defense Counsel]:

Q. You didn't make any statement about that knife until the police told you that they would not criminally charge you, did you?

A. I didn't make a statement about the knife until I took the lie detector test.

MR. MOHLER: Your Honor, may we approach the bench?

THE COURT: Counsel approach the bench.

(Discussion held off the record between Court and counsel at the bench.)

THE COURT: Ladies and gentlemen, there are certain words we don't use in Court, things we don't talk about. If you are in a civil case involving a car wreck, you don't talk about insurance. If you are in a criminal case, you don't talk about lie detectors. They aren't considered reliable. The witness made some comment to the effect about a lie detector. You should disregard that remark entirely and not consider the fact that she made reference to taking a lie detector test as either adding or detracting from any credibility she might otherwise have. Put that out of your mind entirely.

Young lady, don't make any further mention to such a procedure.

Later, during the trial of the case, the State called as a witness Trooper Michael A. Smith who had investigated the incident giving rise to the indictment against the appellant. Again the prosecution asked no questions about the polygraph examination administered to Ms. Goins. When Trooper Smith was cross-examined, however, the following occurred:

BY MR. DETCH [Defense Counsel]:

Q. Officer, when did the authorities first learn from Miss Kimberly Goins there had been a knife used?

A. When?

Q. Yes.

A. Miss Goins indicated to me there was a knife used—the date is on the second statement. She gave me two statements in the same day about that evening. The second statement, counsel, I believe you have a copy of it, it was on a Wednesday. Was that the 29th? Don't quote me on the date.

Q. How many—was this last statement she gave a third statement?

A. Third statement?

Q. Would it have been the third statement?

A. The third statement that she gave was a statement given to a polygraph examiner. She gave me two statements on one day and then she submitted to a polygraph.

MR. DETCH: I have no further questions.

Defense counsel at this time made no objection to Trooper Smith's mention of the polygraph examination, and no additional cautionary instruction was given by the Court.

After the jury was excused, defense counsel moved for a mistrial based on the polygraph testimony. The prosecution took the position that the jury had not been tainted by the brief references of the polygraph, both of which had been elicited by defense counsel. The prosecution also took the position that the court's instruction to the jury was sufficient to correct any possible error and suggested that the court again give a cautionary

instruction with the rest of the instructions at the close of the case. Defense counsel, in effect, opposed the suggestion that an additional cautionary instruction be given, and the court consequently did not give it.

Defense counsel also moved for a mistrial based on the failure of the State to provide him with a copy of Ms. Goins' statement made during the polygraph examination. While he admitted that he had been provided with copies of earlier statements, and that the police report had mentioned the polygraph, defense counsel took the position that he had not requested the polygraph statement prior to trial because he did not expect it to be mentioned. The prosecutor stated that he was unaware of the polygraph statement's existence until it was mentioned by defense counsel in chambers shortly before trial. He also stated that he had not intended for any reference to the polygraph to be made during trial.

The trial court asked defense counsel what defense counsel wanted done. Defense counsel responded: "I would like to see the thing. I could use that for purposes of maybe impeaching the officer but particularly impeaching Ms. Goins." A recess followed, and in the course of the recess, the prosecuting attorney obtained the narrative report prepared by the polygraph examiner which included questions asked Ms. Goins and her responses. Defense counsel was provided with the report and concluded that it could not be used effectively without getting into the polygraph issue again. Defense counsel then stated: "Your Honor, we would ask that that at least be made a part of the record. Note our objection to it. We feel this should have been provided prior to leaving the witness stand and likewise renew our motion for mistrial dealing with it."

At the conclusion of the trial, the trial court denied the appellant's motions for mistrial.

## II.

## DISCUSSION

### A. *The Polygraph Issue*

This Court has indicated that a grant of a mistrial is within the sound discretion of the trial judge, and that a mistrial should be granted only where there is a manifest necessity for discharging the jury prior to the time it has rendered its verdict. *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983).

■ Although neither polygraph test results nor the offer or refusal by a defendant to take a polygraph test is admissible in a criminal trial in West Virginia, this Court has recognized that the mere mention of a polygraph, without revealing the results, does not necessarily require the reversal of a criminal conviction. *State v. Beard,* 194 W.Va. 740, 461 S.E.2d 486 (1995).

Further, this Court has indicated that a mistrial should not be automatically granted in any case where mention of a polygraph test is made. *State v. Porter,* 182 W.Va. 776, 392 S.E.2d 216 (1990) and *State v. Acord,* 175 W.Va. 611, 336 S.E.2d 741 (1985). Specifically, in note 4 of *State v. Acord, id.,* we stated: "[O]ur analysis of whether the mention of a polygraph test is grounds for a mistrial is the same as the analysis for any other error."

In *State v. Porter, supra,* the Court was confronted with the question of whether a mistrial should be granted in a criminal case where the prosecution did not elicit evidence of a polygraph test, but defense counsel, during recross-examination of a witness brought out the fact that polygraph tests had been used and where the court had given the jury a cautionary instruction after the information had been elicited. In *Porter,* the Court concluded:

> Under these circumstances, while the evidence as to the polygraph tests was inadmissible, the admission thereof was not reversible error because the defendant was responsible for the admission of most of this evidence and because the circuit court's instruction cured the error of the admission of the polygraph evidence by the State.

*State v. Porter,* 182 W.Va. at 782, 392 S.E.2d at 222.

■ The evidence in the present case shows that it was appellant's counsel who pursued the lines of questioning which elicit-

ed from Ms. Goins and Trooper Smith the fact that a polygraph examination had been administered to Ms. Goins. Neither witness disclosed whether the polygraph had been passed. The trial court, upon first hearing mention of the polygraph, promptly gave a cautionary instruction. Although a second curative instruction was not given when defense counsel, on the second occasion, elicited mention of a polygraph examination, the trial court, after the conclusion of the evidence, offered to give an additional cautionary instruction to the jury relating to the mention of polygraph evidence, but defense counsel, in effect, rejected that offer.

The principal cases in this State relating to the impropriety of mentioning polygraph examinations and polygraph examination results have involved situations where references have been made to the defendant himself taking a polygraph examination and passing or failing the examination. In the present case, no evidence was introduced relating to the defendant's taking or passing or failing an examination. The only mention of a polygraph involved the one Ms. Goins took. As has previously been stated, that testimony was elicited by defense counsel, and when initially elicited, provoked a cautionary instruction from the trial judge.

■ In view of the fact that in *State v. Porter, supra,* we recognized that where a defendant or defense counsel is responsible for admission of evidence relating to a polygraph examination, and where a cautionary instruction has, in fact, been given relating to such testimony, the admission of the evidence does not necessarily constitute reversible error, and in view of the further fact that the polygraph examination testimony in the present case related only to an examination administered to a witness rather than the defendant himself, the Court does not see that it was manifestly necessary for the trial court to discharge the jury, or that the refusal of the trial court to grant a mistrial constituted an abuse of discretion.

### B. The Failure of the State to Provide Defense Counsel with the Polygraph Statement

The appellant's second assignment of error is that the trial court erred by failing to grant a mistrial based upon the State's failure to provide the appellant with Kim Goins' polygraph statement prior to her direct testimony in the case.

As indicated previously, the State did not elicit the fact that Kim Goins had taken a polygraph examination. It further appears that the prosecuting attorney was unaware that polygraph tests had been administered to Ms. Goins until defense counsel mentioned it in chambers shortly before trial.

After defense counsel moved for a mistrial on the ground that he had not been provided with the statement, the trial court stated: "Well, what do you want me to do? Do you want to stop the trial and let him [the prosecutor] go see if there is such a statement? ... what are you moving for, a mistrial based on failure to provide you with some discovery? I'm not sure what you want." Defense counsel stated: "I would like to see the thing. I could use that for purposes of maybe impeaching the officer but particularly impeaching Ms. Goins." The court in response to this declared a recess to afford the State an opportunity to produce the statement. During the recess, the prosecuting attorney, who had not previously seen the statement, procured a narrative report from the polygraph examiner which included questions asked Ms. Goins and her responses. After reviewing the report and concluding that it probably could not be used effectively without getting into the polygraph issue again, defense counsel stated: "Your Honor, we would ask that that at least be made a part of the record. Note our objection to it. We feel this should have been provided prior to leaving the witness stand and likewise renew our motion for a mistrial dealing with it." The trial court thereupon found, among other things, that if defense counsel had requested the statement after Ms. Goins testified on direct, the court could have inquired into it and that the defect could have been cured by a production of what the State had available at that time.

The rule relating to the production of statements such as the one involved in this assignment of error is Rule 26.2 of the West

Virginia Rules of Criminal Procedure. That rule provides in relevant part:

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Rule 26.2(a) of the West Virginia Rules of Criminal Procedure. The rule further provides that upon delivery of the statement, the court may recess the proceedings so that counsel may examine the statement and prepare its use in the proceedings. Rule 26.2(d) of the West Virginia Rules of Criminal Procedure.

■ Recently, in *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998), this Court summarized the requirements of Rule 26.2 of the West Virginia Rules of Criminal Procedure. In Syllabus Point 5 of that case, the Court stated:

Rule 26.2 of the West Virginia Rules of Criminal Procedure imposes certain conditions for the disclosure of the prior statements of a witness, who is not the defendant, to the adverse party for purposes of impeachment. There are four basic conditions that must be met to require disclosure under Rule 26.2. First, a witness' prior statement being sought for the purpose of impeaching the direct testimony of that witness must satisfy the definition of a witness' prior statement pursuant to Rule 26.2(f). Second, the statement must be possessed by the proponent of the witness. Third, the witness' prior statement must relate to the subject matter of the witness' testimony on direct examination. Fourth, the prior statement need not be disclosed earlier than the conclusion of the witness' testimony on direct examination.

■ Under this rule, the appellant was not entitled to a copy of Ms. Goins' polygraph examination until after her direct testimony. After she did testify as to the existence of the statement, the appellant's trial counsel did not request the production of the statement until after the State had rested its case. When the statement was actually produced, defense counsel elected not to use it, and, in fact, indicated that it would not be useful. Lastly, after the court elected to deny the defense counsel's motion for mistrial, defense counsel said: "I will accept the Court's ruling."

Given all the circumstances, the Court concludes that the trial court did not err in refusing to grant the appellant a mistrial on the production ground.

### C. *Sufficiency of the Evidence and the Trial Court's Instruction Relating to the Inference of Malice*

■ Recently, in Syllabus Point 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court stated:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

■ During the trial in the present case, the victim, Henry Wright, testified that he was repeatedly cut by the appellant with something that was so sharp that he couldn't feel it. The physician who treated the victim testified that the lacerations which he had suffered were made by a sharp object such as a knife and could not have been made by a fingernail. Additionally, Ms. Goins testified that she had seen a little silver knife in the appellant's hands after the fight and that he

had told her that he had cut the victim. The Court believes that all this evidence, when viewed in the light most favorable to the prosecution, does support the finding that the appellant severely cut Mr. Wright with a knife and does support the ultimate verdict rendered by the jury.

█ In conjunction with his claim that there was insufficient evidence to support the jury's verdict, the appellant claims that there was insufficient evidence to support the giving of, and that the trial court erred in giving, State's Proposed Instruction No. 2. That instruction stated, in relevant part: "Malice and intent to maim or disfigure, disable or kill may be inferred by the jury from the defendant's use of a deadly weapon under circumstances which you do not believe afforded the defendant excuse, justification or provocation for his conduct." In challenging this, defense counsel argued first that the State did not prove that any type of weapon had been used in the maiming of Henry Wright. He also argued that if the circumstantial evidence of the case could be construed as establishing that a weapon was used, the use of such circumstantial evidence would require the drawing of an inference, and the predicating of malice on the basis of such an inference would in effect be allowing of the making of an inference upon inference.

As has previously been stated, the medical evidence indicated that the victim's wounds had been caused by a sharp object such as a knife, and Ms. Goins' testimony indicated that the appellant had used a knife on the victim.

This Court believes that there was evidence in the case that a weapon was used to inflict the injuries which Mr. Wright sustained and that, given the nature of the evidence, the trial court did not commit reversible error by giving the State's Instruction No. 2.

For the reasons stated, the judgment of the Circuit Court of Monroe County is affirmed.

Affirmed.