# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

November 3, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0095** (Harrison County 13-F-99-03)

**Christopher L. L.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Christopher L. L.,[1] by counsel Jerry Blair, appeals the order of the Circuit Court of Harrison County, entered December 12, 2013, that denied his post-trial motions for a new trial and for a judgment of acquittal. A jury found petitioner guilty of incest, first degree sexual assault, first degree sexual abuse, and sexual abuse by a parent. The State of West Virginia, by counsel Derek A. Knopp, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and his wife had two children, a son and a daughter, prior to their divorce in 2010. Thereafter, the children resided primarily with their mother, but had frequent visitation with petitioner. Following a visitation with petitioner, petitioner's daughter, L.L., told her mother that petitioner had placed his fingers inside her "pee bug" (L.L.'s name for her vagina) and put his "pee bug" (L.L.'s name for his penis) in her mouth. At the time, L.L. was six years old.

Thereafter, L.L.'s mother took L.L. to a hospital where L.L. was examined by a Sexual Assault Nurse Examiner. L.L. also participated in a forensic interview and L.L's mother was interviewed by the investigating officer assigned to the case.

In May of 2013, petitioner was indicted on one count of incest in violation of West Virginia Code § 61-8-12; one count of sexual assault in the first degree in violation of West Virginia Code § 61-8B-3; one count of sexual abuse in the first degree in violation of West Virginia Code § 61-8B-7; and one count of sexual abuse by a parent in violation of West Virginia Code § 61-8D-5. These acts were alleged to have occurred during November of 2012.

---

[1] Consistent with our practice in cases involving sensitive matters, we use petitioner's first name and middle and last initial, and the child victim's initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645n.1, 398 S.E.2d 123, 127n.1 (1990); *see also* W.Va. R. App. P. 40(e)(1).

Petitioner's trial began on August 12, 2013. During the State's case-in-chief, L.L. testified that, while she and petitioner were in the bathroom of petitioner's home, he "wanted [her] to clean his pee-bug with her mouth" and he wanted to clean her pee-bug with his fingers. L.L then demonstrated for the jury how petitioner used his fingers. L.L. also testified that petitioner did not use a washcloth when he "cleaned" her and that his penis had entered her mouth.

The State also called the investigating officer who had interviewed L.L.'s mother. The officer testified that, during the interview, he lied to L.L.'s mother in an effort to learn whether she had encouraged L.L. to make false allegations against petitioner. The lie was that petitioner had passed a polygraph examination. Immediately following this testimony, petitioner's counsel objected and moved for a mistrial. The exact discourse follows.

The State: May I ask you [the investigating officer], on April 4th of 2012, did you lie to [L.L.'s mother] or were you truthful with [L.L.'s mother].

. . . .

The Investigating Officer: I lied to her.

The State: Why did you lie?

The Investigating Officer: In an effort to gain the truth.

The State: What is it that you lied about?

The Investigating Officer: I told [L.L.'s mother] that [petitioner] had actually passed a polygraph.

Defense Counsel: Objection, your honor.

The Court: Counsel, approach.

(The following discussion was held at the bench.)

Defense Counsel: I move for a mistrial, Your Honor.

. . . .

The State: There was no polygraph. None whatsoever.

Defense Counsel: The implication is [L.L.'s mother] said [petitioner] lied when he told [L.L.'s mother] that he passed a polygraph. The implication is that he failed a polygraph.

. . . .

2

The Court: Let me deny [the defense's] request for a mistrial, and I will give [a] cautionary instruction to the jury, and [the State will] clean it up.

The State: I will.

(The bench conference concluded.)

The Court: Ladies and gentlemen of the jury, let me give you a cautionary instruction. There is evidence that's been presented to you from this witness concerning a polygraph. Polygraphs are not admissible in court.

The State (resuming its questioning of the investigating officer): There was no polygraph. Correct?

The Investigating Officer: Correct.

. . . .

The State: Okay. And you lied to her why?

The Investigating Officer: In an effort to gain the truth. I basically wanted to gauge her reaction to that, to try to determine her truthfulness in regard to the allegation.

. . . .

The State: Okay. What was [L.L.'s mother's] reaction when you lied to her?

The Investigating Officer: She was relieved, actually, to find out that [petitioner] didn't do that, that he wasn't responsible.

The State: Did that surprise you—

The Court: Let me see counsel again.

At the ensuing bench conference, the court expressed concern that the State was asking the investigating officer to testify regarding L.L.'s mother credibility. Therefore, the court instructed the State to "move on." Thereafter, the investigating officer read a portion of a written statement petitioner had given to the officer during a second interview.

> I was in the bathroom use (sic) it when [L.L.] barged in. I turned to chase her out, and my pants fell down in the process of chasing her out, and my penis might have touched her mouth or the side of her face while chasing her out. I didn't think anything . . . at the time because she was running and laughing about what had happened. She has barged in on me and my wife several times before while we were being intimate to each other.

3

The investigator also testified that, when he asked petitioner what portion of his penis went into L.L's mouth, petitioner replied, "Just the tip of it, if any at all."

On August 13, 2013, the jury found petitioner guilty on all four counts of the indictment.

Post-trial, petitioner filed motions seeking a new trial or a judgment of acquittal on the ground that the jury was left with the impression that petitioner had denied a request to take a polygraph examination. By order entered December 12, 2013, the circuit court denied both motions and found as follows.

> [T]he testimony [] regarding a polygraph concerned a lie told . . . to a witness . . . as an investigative technique utilized by the officer in an attempt to see if the witness was being truthful; there was no evidence or inference presented to the jury that [petitioner] ever took, passed, failed or was offered or refused any polygraph examination; the [c]ourt gave a cautionary instruction at the time of the testimony by [the investigating officer] to which [petitioner] did not object; even if the question and answer concerning the polygraph examination was as counsel for [petitioner] represented in the motion, the cautionary instruction was sufficient at the time to keep the jury form using any polygraph examination reference as a part of its deliberations; and there was sufficient evidence irrespective of the mention of the polygraph examination from which [the] jury could find beyond a reasonable doubt that [petitioner] committed the offenses charged in the indictment.

By that same order, the circuit court sentenced petitioner to five to fifteen years in prison for incest; twenty-five to one hundred years in prison for sexual assault in the first degree; five to twenty-five years in prison for sexual abuse in the first degree; and ten to twenty years in prison for sexual abuse by a parent. The circuit court ordered these sentences to be served consecutively.

Petitioner now appeals the denial of his post-trial motions.

This Court has explained the standard of review with respect to a circuit court's denial of a motion for a new trial as follows:

> ""'Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

Syl. Pt. 1, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Further,

4

"[i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *White*.

Furthermore, this Court has explained that the standard of review with respect to a circuit court's denial of a motion for a judgment of acquittal is de novo. As we said in *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996):

The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

On appeal, petitioner's sole assignment of error is that the circuit court erred in denying his motions for a new trial and a judgment of acquittal on the ground that evidence entered by the State at petitioner's trial inferred that petitioner had refused to take a polygraph examination and was, therefore, guilty of the crimes charged. Petitioner also claims (1) that the circuit court's curative instruction was constitutionally insufficient because it did not direct the jury to disregard the polygraph-related testimony, and (2) that the circuit court failed to give any other instruction regarding the polygraph-related testimony, including those requested by the defense.

In Syllabus Point 2 of *State v. Chambers*, 194 W.Va. 1, 459 S.E.2d 112 (1995), this Court said, "Reference to an offer or refusal by a defendant to take a polygraph test is inadmissible in criminal trials to the same extent that polygraph results are inadmissible." In *Chambers*, there was testimony showing that the defendant was offered, but refused, a polygraph examination. Conversely, in this case, the investigating officer never said that petitioner ever took, passed, failed, or was offered a polygraph examination. Instead, the investigating officer clearly testified that he lied to petitioner's former wife about the existence of a polygraph examination, and then clarified that that there was no polygraph examination in this case.

This Court recently examined a factually similar situation in *State v. George J.*, 13-0132, (W.Va. Supreme Court, Nov. 8, 2013) (memorandum decision). In that case, the petitioner argued that the trial court erred in permitting the recording of his confession to be admitted into evidence at trial because it contained references to a polygraph examination. *Id.* at 2. In affirming George J.'s conviction, this Court cited to *State v. Lewis*, 207 W.Va. 544, 548, 534 S.E.2d 740, 744 (2000), as follows:

Although neither polygraph test results nor the offer or refusal by a defendant to take a polygraph test is admissible in a criminal trial in West Virginia, this Court

5

has recognized that the mere mention of a polygraph, without revealing the results, does not necessarily require the reversal of a criminal conviction. *State v. Beard*, 194 W.Va. 740, 461 S.E.2d 486 (1995).

*Id.* at 4.

In the instant case, following the investigating officer's mere mention of a polygraph, the circuit court gave the jury an appropriate cautionary instruction. Thereafter, the investigating officer clarified that no polygraph examination occurred in this case. On these facts and in light of our holdings in *Lewis* and *Beard*, we cannot say that the circuit court abused its discretion in denying petitioner post-trial motions.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 3, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II