JAMES C. ACHISON *vs.* JONATHAN HUDDLESON, SUPERINTENDENT OF THE UNITED STATES ROAD WITHIN THE LIMITS OF THE STATE OF MARYLAND.—*December* 1848.

The act of Assembly passed the 10th of March 1843, imposing certain tolls upon passengers, in "any passenger or mail coach," passing over the *Cumberland* road, is no violation of the compact between the *United States* and *Maryland,* under the acts of Congress ceding to the latter that portion of said road within her limits, and the act of this State of 1831, ch. 85, and its supplements accepting the same.

A carriage whenever it is carrying the mail, must be held to be laden with the property of the United States within the true meaning of this compact, and consequently exempted from the payment of tolls.

But this exemption does not apply to any other property conveyed in the same vehicle, nor to any person travelling in it, unless he is in the service of the *United States*, and passing along in pursuance of orders from the proper authority.

The stipulation in behalf of the *United States*, is *limited* to the carriages laden with the property of the government, and their necessary incidents, the horses by which they are drawn, and the driver who guides them.

The tolls imposed by the act of the 10th of March 1843, are not to be regarded as imposed upon the coach, but upon the passengers.

This contract should not be expounded by the rules applicable to grants between individuals, but, in a liberal spirit, securing to the *United States* the full benefit of the exemption, and, at the same time, leaving the *State* in possession of the means to accomplish the great object of the contract, viz., the preservation of the road.

APPEAL from *Allegany* county court.

An action of *assumpsit* was instituted in *Allegany* county court at April term 1846, by *James C. Achison*, the appellee, who was duly appointed the superintendent of that part of the *United States* road within the limits of the State of *Maryland*, by virtue of the act of 1831, ch. 85, passed on the 23rd of January 1832, and the several supplements thereto, to recover the sum of $716, for tolls due said superintendent for passengers travelling in the stage coaches of the defendants over said road.

The case was submitted upon an agreement of facts entered into between the parties, which, with the several acts of Assembly and of Congress therein referred to, is fully set forth in the opinion of the court. Upon this statement of facts, a *pro forma* judgment for the amount agreed upon was rendered for the plaintiff, from which the defendants appealed to this court.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN and FRICK, J.

By NELSON and PRICE for the appellant, who contended, that upon the statement of facts, there was error in the judgment of the court below; *because* the provisions of the acts of Assembly of *Maryland*, set out in said statement, and by virtue

and force of which, the plaintiff in the court below sought to support his suit, are repugnant to the provisions of the act of Congress, likewise referred to in said statement, and are therefore inoperative and void.

McKAIG for the appellee, insisted, that this case is clearly distinguishable from the case of *Searight vs. Stokes, et al.,* 3 *How.,* 151, and *Neil, Moore & Co., vs. The State of Ohio, same book,* 720. That the act of *Maryland,* of the 10th of March 1843, is not liable to the objections which prevailed in the cases in 3 *Howard,* referred to. That the provision of the act of 1843, on which this action is founded, is general, embracing all passengers in four horse coaches or stages, and is not, therefore, in violation of the compact between the State of *Maryland* and the *United States,* as contained in the *Maryland* act, passed January 23rd 1832.

MARTIN, J., delivered the opinion of this court.

The legislature of *Maryland,* on the 23rd of January 1832, passed an act, entitled "an act for the preservation and repair of that part of the *United States* road, within the limits of the State of *Maryland.*"

The *first* section declares, that as soon as the assent of the government of the *United States* is obtained, as prescribed by the thirteenth section of the act, the road shall be placed under the care of the State; and provides for the appointment of a superintendent of that part of the road lying within the limits of the State; and confers upon him full power and authority to erect toll-gates thereon, at suitable distances.

The *second* section contains a specific enumeration of the vehicles, and property upon which tolls are to be imposed, and the rates at which they are to be charged; and, among other things, provides, "that for every chariot, coach, coachee, stage, wagon, phæton, chaise, or other carriage, with two horses and four wheels," there shall be imposed a toll of twelve cents; and for either of the carriages last mentioned, with four horses, eighteen cents. And after certain domestic exemptions, which have no connection with the present case, the section terminates

with this *proviso:* "That no toll shall be received or collected for the passage of any wagon or carriage, laden with the property of the *United States,* or any cannon or military stores belonging to the *United States,* or to any of the States composing this Union."

By the *thirteenth* section it is declared : "That this act shall have no force or effect, until the Congress of the *United States* shall assent to the same; and until so much of the said road as lies within the limits of the State, be first put in a good and complete state of repair, by an appropriation made by the Congress of the *United States* to repair the same; and to pay the expense of building toll-houses and erecting toll-gates, to be built and erected by the superintendent," &c., with the provision: "That the General Assembly might, at any future session, change, alter or amend this act, so as to regulate the amount of tolls; provided, that the same should not be so altered or amended, as to reduce or increase the rates of tolls thereby established, below or above a sum necessary to defray the expenses incident to the preservation and repair of the road, for the payment of fees and compensation to the superintendent, collectors of tolls, and other agents: with the further provision, "that no change, alteration or amendment, shall ever be adopted, that will in anywise defeat or affect the true intent and meaning of this act."

The remaining sections it is unnecessary to notice, as they are mere police regulations, introduced into the act for the purpose of securing the faithful application of the tolls to the preservation and repair of the road.

An amendatory act, with respect to the preservation and repair of this road, was passed by the General Assembly of *Maryland,* on the 1st of March 1843.

By the *first* section of this act, it is declared, "that there shall be demanded and received by the toll collectors, on the road within the limits of the State, from the owner or owners of every passenger or mail coach, or stage, passing the gates on said road, the sum of four cents for every passenger carried in the same for the space of ten miles, on said road, and so in proportion for every greater or less distance; which shall be

taken and received in lieu of the tolls now established by law, on all coaches or stages with four horses, passing over said road, and which shall be collected, &c., as other tolls are collected and expended, under existing laws."

The *second* section declares, that it shall be the duty of the proprietor or proprietors, his or their agent, to furnish under oath, on the first Monday of every month, to the gate-keeper at gate No. 1, a list, showing the number of passengers transported over said road, in their respective coaches, for the month next preceding the time when the said list is to be returned.

The *third* section provides, that in the event of the said proprietors, or their agents, failing or refusing to comply with the provision of the second section of the act, it shall be the duty of the gate-keeper at gate No. 1, to demand of and receive from such proprietors so failing, the sum of one dollar for each and every stage-coach passing over said road its entire length.

And by the *fourth* section, it is made the duty of the superintendant to institute proceedings at law, either in the county courts or before a justice of the peace, against the proprietors of all or any of the stage-coaches, upon their refusal or neglect to pay all tolls imposed by this act.

An action of *assumpsit* was instituted in *Allegany* county court by the appellee, as superintendent of the road within the limits of the State of *Maryland*, to recover the sum of $716, for tolls alleged to be due to him for passengers traveling in the stage-coaches of the appellant, over the road in question.

The case was submitted to the court upon an agreed statement of facts, the material parts of which are substantially as follows:—

1. It is agreed that the stage coaches, for which the sum of one dollar each is sought to be recovered in this action, were four horse stage-coaches, used and employed by the defendants under their contract with the *United States* of the 5th of September 1839, for the transportation of the mail of the *United States*, and that the passengers, for the failure of the defendants to furnish a list of whom, under the second section of the act of the 10th of March 1843, were passengers transported in the said coaches conveying the *United States* mail.

2. That the number of coaches in which the said mails were carried, were necessary for the carriage of the said mails, and that there was no unfairness or fraud on the part of the defendants, in dividing the mails so as to use a greater number of coaches, for the carriage of the said mails, than were actually necessary for such purpose.

3. That the defendants did carry passengers in the said four horse coaches, and that the said defendants did not comply with the provision of the second section of the act of the General Assembly of *Maryland*, of the 10th of March 1843, by returning a list on the first Monday of every month, or at any other time, showing the number of passengers thus transported over the said road, in the said coaches.

It was further admitted, that the said acts of Assembly did not increase the tolls above a sum necessary to defray the expenses incident to the preservation and repair of the said road; and it was agreed, that if upon this statement of facts, the court should be of opinion that the plaintiff is entitled to recover, either upon the present declaration, or upon an amended declaration, for the four cents *per* passenger for every ten miles, the judgment is to be entered for the plaintiff for the sum of $716. But if the court should be of opinion, that the plaintiff is not entitled to recover in either case, then judgment was to be given for the defendants. A *pro forma* judgment was rendered for the appellee, upon this statement of facts, from which the present appeal has been taken.

By an act passed on the 3rd of July 1832, Congress declared its assent to the law of *Maryland*, as well as to the law of *Pennsylvania*, of the 4th of April 1831, and appropriated the sum of $150,000, for the reparation of the road east of the *Ohio* river, and for the other improvements required by the laws of those States.

On the 24th of June 1834, there was an additional appropriation by Congress, for the construction and repair of the *Cumberland* road, the *fourth* section of which declares: "That as soon as the sum, by this act appropriated, shall be expended in the repair of said road, agreeably to the provisions of this act, the same shall be surrendered to the States, respectively, through

which said road passes; and the *United States* shall not thereafter be subject to any expense for repairing said road.

As soon, therefore, as the *United States* assented to, and complied with the propositions and conditions contained in the *Maryland* law, a compact was created between the general government and the State of *Maryland*, through their respective legislatures, obligatory upon both parties, the terms and character of which is to be found in the statute of *Maryland* of the 23rd of January 1832; and the single question raised for our consideration by this record, is, whether the provisions of the act of the 10th of March 1843, are to be pronounced inoperative and void, as an infraction of this contract, between the *United States* and the State of *Maryland*.

On the 4th of April 1831, the State of *Pennsylvania* passed an act for the preservation and repair of the *Cumberland* road.

The stipulation in favor of the *United States*, was similar in terms to the *Maryland* act of the 23rd of January 1832. The law of *Maryland*, indeed, is a literal transcript of the *Pennsylvania* act, introduced to accomplish the same ends and purposes. They both declare that no toll shall be collected for any carriage laden with the property of the *United States*, or any cannon or military stores belonging to the *United States*, or to any of the States composing this Union.

On the 13th of June 1836, *Pennsylvania* passed another act, declaring: "That in all cases of wagons, carriages, stages, or other modes of conveyance, carrying passengers or goods, such wagon, stage or other mode of conveyance, shall pay half-toll upon such modes of conveyance."

This act was pronounced by the *Supreme Court*, in the case of *Searight vs. Stokes*, decided at the January term 1845, 3 *How.*, 151, to be void, upon the ground, that a carriage, whenever it is carrying the mail, must be held to be laden with the property of the *United States*, within the true meaning of the compact between the *United States* and the State of *Pennsylvania*.

But the chief justice, in delivering the opinion of the court, at page 170, says: "Unquestionably the exemption of carriages bearing the mail, is no exemption of any other property,

conveyed in the same vehicle; nor of any person traveling in it, unless he is in the service of the *United States*, and passing along in pursuance of orders from the proper authority. Upon all other persons, although traveling in the mail stage, and upon their baggage, or any other property, although conveyed in the same carriage with the mail; the State of *Pennsylvania* may lawfully collect the same toll that she charges either upon passengers, or similar property, in other vehicles.'' The court held, that '' the compact did nothing more than exempt the carriages laden with the property of the *United States*, and the persons and baggage of those who were engaged in their service;'' and that ''toll might be imposed upon every thing else, in any manner passing over the road.''

The act of *Ohio* of the 4th of February 1831, has a reservation in favor of the *United States*, in character similar to that of *Maryland*, but broader in its terms.

The 4th section provides: ''That no toll shall be collected for the passage of any stage or coach conveying the mail of the *United States*, or horses bearing the same, or any wagon or carriage laden with the property of the *United States*, or any cavalry or other troop, arms or military stores belonging to the same, or to any of the States composing this Union, or any persons on duty in the military service of the *United States*, or of the militia of any of the States.''

The legislature of *Ohio*, by the 4th section of an act passed on the 6th of February 1837, imposed a toll of ''three cents on every passenger, transported in the mail-stage, at each toll-gate.'' By the 24th section of the act of the 19th of March 1838, the board of public works was authorised to revise and modify the rates of toll to be paid by persons using the road, and in pursuance of this power, the board, by an order, raised the toll on each passenger in the mail-stage, to ten cents: '' But no toll was charged, either by the law, or the order of the board, upon persons travelling in any other carriage.

In the case of *Neil, Moore & Co., vs. the State of Ohio*, 3 *How.*, 720, the Supreme Court pronounced the toll imposed by these acts, a violation of the compact between the general government and the State, because they were levelled exclu-

sively against passengers traveling in the mail coaches of the *United States*. But the court again say, as they decided in the case of *Searight vs. Stokes*: "That they do not mean to deny the right of the State to impose a toll upon passengers in the mail stages, provided the power is exercised within the spirit and meaning of the agreement, by which the road was transferred to the care of the States. ✳ ✳ ✳ ✳ ✳ ✳ " The language of the court is, that "as the compact contains no stipulation for the exemption of travelers in the mail stages, the general government can demand no advantages in their behalf, which are not extended to passengers in other vehicles. But they have a right to insist, that the equality upon this subject, which *Ohio* originally promised, shall still be maintained; that the privileges and advantages intended to be secured to the carriages conveying the mail, over those granted to other vehicles, shall be preserved in substance and reality as well as in form, and that the passengers in the mail stages shall not be selected and set apart, as the especial objects upon which burdens are to be laid, and to which travelers in other carriages are not to be subjected."

That the State retains the right to enforce tolls upon passengers traveling in the mail coaches in common with travelers in other vehicles, has been directly determined by the Supreme Court, whose decisions upon the question are to be received as conclusive.

It is strange, indeed, that this question of power should ever have become a subject of contention. The stipulation in behalf of the *United States*, is limited to the carriages laden with the property of the government, and their necessary incidents, the horses by which they are drawn, and the driver who guides them. But it would be a most extraordinary expansion of the exemption to maintain that it embraces the passenger, who, in no proper sense, can be considered as an incident to the mail coach, and who is transported by the owner of the stage, for his own profit and advantage.

The provisions of the *Maryland* act of the 10th of March 1843, with respect to both, is so general in its character, embracing all passengers in four-horse coaches or stages, and is

24      v.7

not, therefore, obnoxious to the objection, which was held to be fatal in the *Ohio cases*. And the right of the appellee to maintain this action, depends on the question, whether the tolls authorised by the act of 1843, are to be regarded as imposed upon the coach, or upon the passengers? This can scarcely be considered as an open question, after the decision of the case of *Neil, Moore & Co., vs. the State of Ohio*, in 3 *How.*, 720.

The *fifth* section of the act of *Ohio*, of the 5th of February 1837, provides, "that each and every driver of any stage, coach, or other vehicle, belonging to any such mail contractors, other than such as are allowed to carry passengers free of toll, shall at each and every gate, report the number of seats occupied in such stage, to the keeper of such gate, whose duty it shall be to open an account against the *proprietor* or *proprietors* of such stage, &c., in a book kept for that purpose, three cents for each passenger, as provided in the preceding section of this act; and said *proprietor* or *proprietors* shall pay over to such gate-keeper, at the end of every three months, the aggregate amount of tolls which shall have become due for passengers, and charged as above provided."

The *sixth* section declares, "that should the driver of any stage, &c., neglect or refuse to report to any gate-keeper the number of seats occupied in said coach, as required by the preceding section, it shall be the duty of such gate-keeper to charge the *proprietor* or *proprietors* of such stage, at the rate aforesaid, for each and every seat which might be occupied in the same, to be recovered in an action of debt." And by the *eighth* section, "the board of public works is authorised to collect tolls from any *proprietor* or *proprietors* of any line of stages, post coaches, or other vehicle for the conveyance of passengers quarterly," &c. It is perceived, that by this act, the proprietor is made responsible for the tolls laid on the passengers. And we have seen that in the case of *Neil and Moore vs. The State of Ohio*, the Supreme Court considered the tolls authorised by this act, as imposed upon the passengers carried in the mail coaches, and it was ruled to be invalid, only because it was unequal and partial in its operation.

It appears from the case of *The State of Ohio vs. Neil and Moore*, as stated by the reporter in 7 *Ohio Rep.*, 132, that the legislature by a statute of the 3d of March 1834, declared it to be the duty of every stage driver to report at each gate, to the keeper, the number of seats occupied in such stage or coach, and to pay at the rate of four cents for each seat so occupied. The court decided that this was to be considered as a tax imposed upon the passenger, and not on the coach itself, and was no invasion of the compact formed between the general government and the State of *Ohio*.

They say: "The proposition cannot be maintained, that the passengers are necessary for the conveyance of the mail, and if they are not, a tax on them is, in no light in which the subject can be viewed, a tax on the coach itself, nor calculated in its consequences to impede or obstruct the transportation of the mail."

The progress of the mail coach could not be arrested for the purpose of exacting tolls from the travelers, and the mode prescribed by the act of 1843 is the only practicable form in which a toll of this description could be imposed upon the passengers. The practical operation of the law would, perhaps, in all cases, be, to subject the passengers to an increased rate of fare.

It was contended by the counsel for the appellants, that the provisions of the *third* section of the act of 1843 show, that these tolls were laid on the coach, and not on the passengers. The court do not think so. The first section of the act makes it the duty of toll collectors, to demand from the owners of every passenger or mail coach, the sum of four cents, for every passenger carried in the same for the space of ten miles on the road; and in an action instituted against the owner of the coach, for the recovery of tolls, the list required to be furnished by the *second* section, would be evidence of the number of passengers transported on the road.

On the failure of the proprietor to furnish a list of passengers, in conformity with the requisition of this section, he is subjected to the penalty provided by the third section, at the rate of one dollar for each coach. Assuming, however, that the sum due for tolls on passengers transported on this road, at four

cents *per capita*, amounted to seven hundred and sixteen dollars, there can be no doubt that the appellee would have been entitled to recover in this action, upon an amended declaration, in pursuance of the power conferred on him by the fourth section of the act.

Even, therefore, if the argument drawn from the third section could be considered as correct, the appellants would still be responsible to the appellee, in an action of *assumpsit*, for the tolls demandable of them, under the provision of its *first* section. Assuming the construction which we have placed on the act of 1843 to be correct, there is, of course, no force in the argument, that it is to be treated as inoperative, because in conflict with the *thirteenth* section of the act of 1832. By that section, the right is expressly reserved to the General Assembly, to change, alter, or amend the act, so as to regulate the amount of tolls, subject only to the provision, so far as the present question is concerned, that no change, alteration or amendment shall ever be adopted, that will in any wise defeat or affect the true intent and meaning of this act. This provision was introduced for the purpose of guarding the compact between the *United States* and the State, against alteration or change, and, independent of this express reservation, it is clear, that the State would have retained the power to alter at pleasure, the provisions of the act of 1831, both with respect to the amount of tolls to be charged, and the objects upon which they were to be imposed, provided there was no invasion of the contract, between the general government and herself.

It has been the purpose of this opinion to show, that there has been no violation of this compact.

When speaking of the rules of construction to be applied in the exposition of a contract like this, the chief justice of the Supreme Court, in the case of *Neil, et al., vs. The State of Ohio*, 3 *How.*, 742, said: "We must look to the relation in which the parties stood to one another, as well as the subject matter of the contract, and the object which the high contracting parties intended to attain, and we must expound it upon principles of justice, so as to accomplish the purposes for which

it was made, and not defeat their manifest interpretation, by a narrow and literal interpretation of its words."

We concur in the proposition thus enunciated. The subject to which the contract referred was the reparation of a national road, connecting the Atlantic States with the valley of the *Mississippi*, constructed at vast expense, and in the preservation of which the whole country was interested; and it was entered into between sovereign States, having no adverse or conflicting interests, but so intimately associated, both politically and socially, that measures of improvement promotive of the interests of the one, necessarily advanced the prosperity of the other. A compact formed between parties, occupying towards each other this relation, should not be expounded by those rules of construction which have been applied in the interpretation of grants between individuals, or between the government and a private person. It should be expounded in a liberal spirit, unfettered by narrow and technical rules, so as to secure to the *United States* the full benefit of the exemption for which she contracted, and, at the same time, to leave the State in the possession of the means of accomplishing the great object of the contract, by raising from tolls the revenue necessary for the preservation of the road. The intention of the compact is carried out, we think, by the construction we have placed on the act of 1843.

JUDGMENT AFFIRMED.