680 S.E.2d 127

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Danny MINIGH, Defendant Below, Appellant.**

**No. 34266.**

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2009.

Decided June 23, 2009.

---

Rocky D. Holmes, Esq. Public Defender Corp., Spencer, Attorney for Appellant.

R. Christopher Smith, Esq., West Virginia Attorney General's Office, Charleston, Attorney for Appellee.

PER CURIAM:

This case is before the Court upon the appeal of the Appellant, Danny Minigh, from the August 20, 2007, Order of the Circuit Court of Calhoun County, denying the Appellant's post-trial motions and sentencing the Appellant to a term of one to five years in the State penitentiary upon his conviction by a jury of one count of conspiracy to commit a felony offense in violation of West Virginia Code § 61–10–31(2005).[1] The felony offense at issue is conspiracy to manufacture a Schedule IV controlled substance in violation of West Virginia Code § 60A–4–101(2005). The Appellant argues that the circuit court erred: 1) by not granting the Appellant's Motion to Dismiss based upon Double Jeop-

---

**1.** West Virginia Code § 61–10–31 provides, in relevant part:

It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State ... if, ... one or more of such persons does any act to effect the object of the conspiracy.

... It shall not be a defense to any prosecution under this section thirty-one that the conduct charged or proven is also a crime under any other provision or provisions of this Code or the common law.

Any person who violates the provisions of this section by conspiring to commit an offense against the State which is a felony, ... shall be guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years or by a fine of not more than ten thousand dollars, or, in the discretion of the court, by both such imprisonment and fine....

*Id.*

ardy when a Braxton County circuit court judge swore a jury, took evidence, and granted the Appellant's Motion to Dismiss, stating that the Braxton County charges are in Double Jeopardy with the Calhoun County charges due to the charges being similar in nature; 2) by allowing the Appellee to use evidence in the Calhoun County trial from the Braxton County traffic stop, ruling that this evidence is intrinsic to the charges; and 3) by not granting the Appellant's post-trial Motion for Judgment of Acquittal when the Appellee produced no evidence of a conspiracy occurring within the jurisdiction of Calhoun County.

## I. Factual and Procedural Background

### A. Braxton County Charges

During the night and early morning of July 22 and July 23, 2004, Trooper Mark Yost of the West Virginia State Police pulled over a vehicle traveling on Route 5 from Interstate 79 heading toward Glenville, in Braxton County, West Virginia. Trooper Yost observed a headlight out on the vehicle, causing him to stop the car. The Appellant was driving the car. He was accompanied by George Dusky, who was the owner of the vehicle and a passenger in the front seat, and James "Bub" Jones, who was a passenger in the back seat.

Trooper Yost testified that the Appellant did not have a driver's license and "appeared to be extremely nervous for a minor traffic violation." The Appellant also gave the trooper a fictitious name, Roger Minigh. After issuing the Appellant a warning, Trooper Yost asked if he could search the vehicle and both the Appellant and Mr. Dusky consented.

During the search, the trooper found a shopping list containing ingredients for methamphetamine, including such items as a hose, matches, and lye. The trooper also found a bag of white pills, one gallon of acetone, four 12–ounce bottles of HEET gas

line antifreeze and one bottle of Red Devil lye. The trooper further testified that he found numerous receipts with the same date on them for various products all of which are considered methamphetamine precursors.[2] Finally, Trooper Yost testified that when he was removing the items from the vehicle, the Appellant made the spontaneous statement that "[t]hat is mine[,]" referring to the items being removed. Trooper Yost then gave all three men a *Miranda* [3] warning and placed them under arrest.[4]

According to the Indictment brought in Braxton County, the Appellant was charged with attempting to operate a clandestine drug laboratory, which is a felony offense. The Circuit Court of Braxton County, by Order entered April 13, 2006, dismissed the Indictment against the Appellant, with prejudice. The Braxton County circuit court's Order indicates that prior to trial the Appellant moved to dismiss the Indictment "asserting double jeopardy. The circuit court took defendant's motion under advisement, desiring to hear the state's case in chief." The circuit court further stated in its Order:

The Court then impaneled the jury and the parties conducted voir dire of the jury panel. The parties each exercised their appropriate strikes of the jury. It appearing proper to do so, the Court then swore in the jury panel.

Each party then gave an opening statement. The State of West Virginia by counsel began the presentation of the sworn testimony of its first witness. The defendant, by counsel cross examined the witness.

At the conclusion of cross examination defendant through his counsel renewed his motion to dismiss the indictment on double jeopardy grounds. The state did not resist the motion. The Court then granted said motion.[5]

2. Trooper Yost testified that "precursors" were items that are normally used in the production of methamphetamine.

3. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. According to the Appellant's brief, James "Bub" Jones and George Dusky were never charged for any crime in Braxton County.

5. The Appellant argues the following regarding the dismissal of the charges in Braxton County:
    After taking the matter under advisement, Judge Facemire swore the jury, allowed the

## B. Calhoun County Charges

Regarding the charges brought in Calhoun County, West Virginia, James "Bub" Jones, one of the passengers in the vehicle that was stopped in Braxton County, gave the West Virginia State Police consent to search his residence, which was located in Calhoun County. Trooper First Class J.B. Hunt of the West Virginia State Police was stationed at the Grantsville Detachment in Calhoun County. He testified that he received the consent to search signed by James M. Jones. Trooper Hunt further testified that he also obtained a search warrant to search Mr. Jones's home.

Trooper Hunt stated that he assisted in executing the search of Mr. Jones's home. He stated that the troopers found a set of Ohaus balance beam scales, a gym bag containing several items that belonged to the Appellant, including an expired West Virginia operator's license belonging to Danny Minigh, three spoons with white powder on them, and stained coffee filters. The troopers also found during the search, which included the area beneath Mr. Jones's home, a pharmaceutical and nursing book, syringes, plastic containers, tubing that was stained brown, a chemistry beaker with a brown substance in it, jars with tubing coming out of them, and a glass jar with a yellow substance in it, among other evidence. Trooper Hunt testified that all of these materials, which were identified in various photographs, were methamphetamine precursors.

A separate search warrant was also obtained for an outbuilding located on Mr. Jones's property near his home. Trooper Hunt testified that there they found metal tubing, brass tubing, and match sticks soaking in solvent. They also found stained coffee filters and a Coke bottle with a substance in it.

Corporal D.P. Starcher of the West Virginia State Police also testified about finding a jug of muriatic acid and additional coffee filters with stains consistent with iodine or some other chemical during the search of the outbuilding. Like Trooper Hunt's testimony, Corporal Starcher's testified about finding evidence in the outbuilding that included copper tubing, a jug, which had the striker plates off of matchbooks soaking in a solvent, and stained gloves. Corporal Starcher further stated that he smelled the strong odor of iodine and other materials that are used in the manufacture of methamphetamine.

Additionally, First Lieutenant Michael Goff of the West Virginia State Police, an expert on methamphetamine, testified that he took part in the investigation of Mr. Jones's residence. Lieutenant Goff testified regarding all the material found at the Jones residence and explained how the material was used in the production of methamphetamine. Lieutenant Goff opined that the items were being used to manufacture methamphetamine, and that the collection of the items found underneath Mr. Jones's house constituted a methamphetamine lab. Lieutenant Goff also testified regarding a stipulation that was introduced into evidence regarding the chemist's report from the West Virginia State Police lab. The chemist was unable to testify due to being on maternity leave; however, Lieutenant Goff testified that the stipulated report indicated that at least one of the samples obtained during the search of Mr. Jones's home was methamphetamine. Additionally, the remaining samples that were analyzed were chemicals that are used in the process of manufacturing methamphetamine.

James M. "Bub" Jones also testified at trial. He stated that he had pleaded guilty to conspiracy as a co-conspirator with the Appellant. During the Appellant's trial, however, Mr. Jones denied any knowledge of the items found at his house, with the exception of the copper tubing located in the out-

---

Prosecuting Attorney to call his first witness and upon the Defendant's renewed motion to dismiss, dismissed all charges in Braxton County against Danny Minigh stating this was one transaction and Mr. Minigh would be in jeopardy with the Calhoun County charges. The problem with this factual rendition is that the Appellant has failed to produce any official transcript or court order wherein the Circuit Court of Braxton County specifically states what the Appellant alleges that the circuit court found. Instead, all that has been provided to this Court is the April 13, 2006, Order, which fails to provide any additional reasoning regarding the ruling made by the Braxton County circuit court.

building, which Mr. Jones stated belonged to him. Mr. Jones further denied making methamphetamine or using the drug. Mr. Jones testified that the Appellant was residing at his home and that the Appellant had purchased the various methamphetamine precursors found in the vehicle during the Braxton County stop on the day of the stop. Mr. Jones testified that even though he didn't know what a "meth lab" was, there might be one at his house. Mr. Jones also testified that he bought some of the pills on the trip with the Appellant and Mr. Dusky.

Finally, David Charles Phares II, an inmate at the correctional facility located at Pruntytown, West Virginia, testified for the Appellant. Mr. Phares stated that he met Mr. Jones in July 2004, when Mr. Jones tried to get him to move a meth lab from his residence in Calhoun County to Gilmer County, West Virginia. Mr. Phares testified that Mr. Jones asked him to help him move the meth lab because of a prior search done of his residence.

The Appellant was indicted in Calhoun County for conspiracy to manufacture methamphetamine, operating a clandestine laboratory, and manufacturing a controlled substance.[6] He was ultimately convicted of the sole count of conspiracy to manufacture methamphetamine.

## II. Discussion

### A. Double Jeopardy

The Appellant argues that double jeopardy was violated when the Circuit Court of Calhoun County denied the Appellant's Motion to Dismiss the charges against him pending in Calhoun County. The Appellant argues that double jeopardy prohibited the trial of the Calhoun County charges, because the Braxton County Circuit Court swore a jury, took evidence, and dismissed the Braxton County charges. The Appellant maintains that dismissal of the Calhoun County charges was warranted due to the dismissal of the

Braxton County charges. In other words, the Appellant asserts that

> it could be argued that jeopardy attached when Judge Facemire swore and seated the jury in Braxton County. Furthermore, if Judge Facemire ruled that this was one transaction and dismissed the case due to being in jeopardy with Calhoun County, then jeopardy has been attached to the whole criminal transaction.

The Appellee, however, argues that the Appellant's conviction in the Calhoun County case did not violate the prohibition against double jeopardy. The Appellee asserts that not only did the offenses occur in two separate jurisdictions; but, the offenses that the Appellant was charged with in Braxton County were separate and distinct from the offenses the Appellant was charged with in Calhoun County.

■ "Our standard of review of a motion to dismiss an indictment is generally *de novo.*" *State v. Davis*, 205 W.Va. 569, 578, 519 S.E.2d 852, 861 (1999). Applying this standard of review, the Court now considers whether double jeopardy principles were violated in this case.

■ In syllabus points one and two of *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992), this Court held as follows regarding double jeopardy:

> The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

> "The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same

6. James "Bub" Jones, the owner of the home that was searched in Calhoun County, was charged similarly to the Appellant, according to the Appellant's brief. Mr. Jones, however, ultimately pleaded guilty to conspiracy to manufacture methamphetamine and agreed to testify against the Appellant. The Appellee, as part of the plea agreement, dismissed the remaining charges against Mr. Jones. Finally, it appears that Mr. Dusky was never charged in Calhoun County.

offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977). *Gill*, 187 W.Va. at 138, 416 S.E.2d at 255, Syl. Pts. 1 and 2.

■ Additionally, the Court adopted the test enunciated by the United State Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining whether a double jeopardy violation was present. That test is as follows:

"Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Syllabus Point 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983).

*Gill*, 187 W.Va. at 138, 416 S.E.2d at 255, Syl. Pt. 6.

■ From a review of the record in this matter, at a hearing on the double jeopardy issue, which occurred on May 11 and May 25, 2006, in the Circuit Court of Calhoun County, counsel for the Appellant acknowledged that the Appellant could not meet the standard for proving double jeopardy under the *Blockburger* test. *See id.* The Appellant's counsel conceded that different elements were needed to prove the charges in Braxton County as opposed to the charges pending in Calhoun County and that the charges in Braxton County versus the charges pending in Calhoun County were not from the same transaction. The Appellant's counsel further conceded that the resolution of the Braxton County case was not an adjudication on the merits and the Appellant's counsel thought that the Braxton County

judge had erroneously dismissed the charges against the Appellant on double jeopardy grounds. Consequently, what the Appellant ultimately argued below is that the ruling of the Braxton County Circuit Court foreclosed the criminal prosecution in Calhoun County by virtue of the application of either res judicata or collateral estoppel.

■ It is untenable as to how the Appellant's counsel failed to direct this Court's attention to the foregoing concessions made before the Circuit Court of Calhoun County regarding the Appellant's double jeopardy argument. Notwithstanding this oversight, the inherent problem with the Appellant's double jeopardy argument is that the dismissal of the charges by the Circuit Court of Braxton County did not result in an acquittal, a conviction, or any resolution of the criminal charges brought against the Appellant on the merits.[7] *Gill*, 187 W.Va. at 138, 416 S.E.2d at 255, Syl. Pt. 1. Neither did the prosecution and ultimate conviction in Calhoun County result in the Appellant receiving multiple punishments for the same offense. *Id.*

■ Finally, a review of the charges filed against the Appellant in Braxton County in relation to the charges filed against the Appellant in Calhoun County establishes that the charges in Braxton County consist of different elements and, therefore, require different proof from those brought against the Appellant in Calhoun County. *Gill*, 187 W.Va. at 138, 416 S.E.2d at 255, Syl. Pt. 6. Specifically, in Braxton County, the Appellant was charged with attempting to operate a clandestine drug laboratory, which stemmed from the evidence that was seized from the vehicle that the Appellant was driving at the time he was stopped in Braxton County. West Virginia Code § 61–11–8 (2005) sets forth the elements for an attempt

---

7. The Court's conclusion in this case, however, does not alter the well-established precedent that jeopardy attaches once a jury is empaneled and sworn, or in a bench trial, once the judge begins taking evidence in the case. Syl. Pt. 3, *Manning v. Inge*, 169 W.Va. 430, 288 S.E.2d 178 (1982)(" 'One is in jeopardy when he has been placed on trial on a valid indictment, before a court of competent jurisdiction, has been arraigned, has pleaded and a jury has been impaneled and sworn.' Syl. pt. 1, *Adkins v. Leverette*, [164 W.Va. 377], 264 S.E.2d 154 (1980)."); *see also* Syl. Pt. 4, *Manning*, 169 W.Va. at 430–31, 288 S.E.2d at 179 ("Jeopardy attaches in a nonjury trial in a magistrate court which is exercising proper jurisdiction when the accused has been charged in a valid warrant and has entered a plea and the magistrate has begun to hear evidence.").

to commit an offense as "[e]very person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished. . . ." *Id.* Further, this Court has held that " '[i]n order to constitute the crime of attempt, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime.' Syl. Pt. 2, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978)." Syl. Pt. 1, *State v. Burd,* 187 W.Va. 415, 419 S.E.2d 676 (1991).

■ In contrast, the charges filed against the Appellant in Calhoun County included manufacturing a controlled substance, operating a clandestine laboratory, and conspiracy to manufacture a controlled substance. The Appellant was ultimately convicted of conspiracy to manufacture methamphetamine. In order to prove conspiracy, the State must show the following:

"In order for the State to prove a conspiracy under *W. Va.Code,* 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, *State v. Less,* 170 W.Va. 259, 294 S.E.2d 62 (1981).

*Burd,* 187 W.Va. at 416, 419 S.E.2d at 677, Syl. Pt. 3.

Consequently, there is no basis for the dismissal of the charges on double jeopardy grounds as from a review of the record in this case, double jeopardy principles have neither been implicated, nor violated regarding the Appellant's criminal conviction. Therefore, the Circuit Court of Calhoun County committed no error regarding its decision denying the Appellant's Motion to Dismiss.

■ Further, regarding the Appellant's collateral estoppel argument, the Appellant is misguided in his argument that "[i]f Judge Facemire ruled that this was one transaction, then any other court of competent jurisdiction is collaterally estopped from

ruling otherwise." In syllabus point one of *State v. Porter,* 182 W.Va. 776, 392 S.E.2d 216 (1990), this Court held:

The principle of collateral estoppel applies in a criminal case where an issue of ultimate fact has once been determined by a valid and final judgment. In such case, that issue may not again be litigated between the State and the defendant. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

*Porter,* 182 W.Va. at 777, 392 S.E.2d at 217, Syl. Pt. 1.

It is clear from the record that the Circuit Court of Braxton County did not determine that there was only one criminal transaction as that reasoning is simply not found in either an official transcript or the circuit court's Order. While it appears that the Circuit Court of Braxton County dismissed the criminal charges against the Appellant on double jeopardy grounds, this Court cannot ascertain from the one order before it that was entered by the Circuit Court of Braxton County that said dismissal was based upon any ultimate factual determination, let alone a correct application of double jeopardy principles. Accordingly, the Appellant has failed to demonstrate the existence of any issue of ultimate fact that was determined by a valid and final judgment that had been determined in the Braxton County case, which would have precluded the case from going forward in Calhoun County. *Id.*

### B. Evidence of Braxton County Charges

The Appellant argues that the circuit court incorrectly allowed evidence from the Braxton County vehicle stop into evidence in the Calhoun County trial in violation of West Virginia Rule of Evidence 404(b). The Appellee argues that the use of the evidence was intrinsic and was a proper application of West Virginia Rule of Evidence 404(b).

■ This Court has previously held that as a general rule "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998); *see also State v. Guthrie,* 194 W.Va. 657, 680, 461 S.E.2d 163, 186

(1995) ("[M]ost rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion standard.... [A]n appellate court reviews *de novo* the legal analysis underlying a trial court's decision."). Where the issue involves the admissibility of evidence under Rule 404(b) of the West Virginia Rules of Evidence, however,

> [t]he standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310–11, 470 S.E.2d 613, 629–30 (1996).

■■■ Using the foregoing standard of review, this Court opined in syllabus point one of *State v. McIntosh*, 207 W.Va. 561, 534 S.E.2d 757 (2000), that

> "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W. Va.R. Evid. 404(b)." Syl. Pt. 1, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

207 W.Va. at 564–565, 534 S.E.2d 757. 534 S.E.2d at 760–761, Syl. Pt. 1.

Additionally, we stated in *LaRock*:

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or

both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted).... Evidence the defendant was responsible for all the injuries to the victim would seem to " 'complete the story of the crime.' " *Masters*, 622 F.2d at 86. (Citation omitted). Indeed, evidence admissible for one of the purposes specified in Rule 404(b) and res gestae not always is separated by a bright line. *See United States v. Cook*, 745 F.2d 1311, 1317–18 (10th Cir. 1984), *cert. denied*, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

196 W.Va. at 312, 470 S.E.2d at 631 n. 29; *see* Syl. Pts. 1 and 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994)(establishing procedural requirements for admissibility of evidence under West Virginia Rule of Evidence 404(b)).

■■■ Lastly, in syllabus point one of *State v. Youngblood*, 217 W.Va. 535, 618 S.E.2d 544 (2005), *cert. granted and judgment vacated on other grounds*, 547 U.S. 867, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006), this Court reiterated that "[o]ther criminal act evidence admissible as part of the *res gestae* or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose.' Syl. pt. 1, *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978)." *Youngblood*, 217 W.Va. at 538, 618 S.E.2d at 547, Syl. Pt. 1.

■■■ The Circuit Court of Calhoun County, by Order entered July 5, 2006, determined that the evidence of crimes that the Appellant had been charged with in Braxton County was intrinsic to the crimes charged in

Calhoun County. Specifically, the circuit court stated:

> The "other crime" evidence occurred near in time and place to the crimes charged by the Indictment. Acquisition of these items that were seized in Braxton County is a necessary preliminary to the operation of a clandestine drug lab and the production of methamphetamine, both of which crimes are alleged in the Indictment. Thus, as the State maintains, this is evidence of preparation. The presence of defendant and Jones, together with the items seized from the [v]an in Braxton county is also probative of the conspiracy count of the Indictment and, therefore, shows concerted activity, as the State maintains.
>
> Further, inasmuch as the defendant was the operator of the [v]an in which the items were seized, the evidence tends to connect the defendant to items necessary to manufacture methamphetamine....
>
> A clandestine drug lab likely cannot operate without the items seized in the Braxton County stop. This evidence portrays to the Jury the complete story of the inextricably linked events.... It provides important context for the crimes that are charged by the Indictment.

Further, a limiting instruction regarding the Braxton County evidence was given to the jury in the Calhoun County trial following the testimony regarding the Braxton County traffic stop. The circuit court instructed the jury that the evidence was admitted for a limited purpose. Specifically, the circuit court instructed as follows:

> The jury must remember that the defendant is being tried in this court for operating a meth lab or a clandestine drug lab in Calhoun County, manufacturing methamphetamine in Calhoun County, and entering into a conspiracy in Calhoun County. This evidence about the traffic stop occurring in another county is something that this man is not on trial for.
>
> It was admitted into evidence for a limited purpose, and that was to the extent that evidence may—depending on the credit and weight you give to it, if any—may indicate a conduct that is a necessary preliminary to the crimes that are charged in Calhoun County or—depending on the weight and credibility you give to the evidence, if any—it may indicate evidence necessary to complete the story of the entire transaction.
>
> So that evidence was admitted for a limited purpose, and you must always remember that in your consideration of this case.

A review of the circuit court's ruling in admitting the evidence of the Braxton County traffic stop supports this Court's conclusion that the circuit court was correct in allowing the admission of the evidence at trial. The circuit court had enough evidence to show that the Braxton County traffic stop and the evidence associated with that stop occurred. The circuit court correctly found the evidence was admissible for a legitimate purpose under West Virginia Rule of Evidence 404(b). The circuit court did not abuse its discretion in determining that the admissibility of the evidence for a limited purpose was more probative than prejudicial under West Virginia Rule of Evidence 403. *LaRock*, 196 W.Va. at 310–11, 470 S.E.2d at 629–30.

### C. Sufficiency of the Evidence

The Appellant argues that the circuit court erred by not granting his post-trial Motion for Judgment of Acquittal when the Appellee produced no evidence of a conspiracy occurring in Calhoun County. The Appellant maintains that because Mr. Jones denied his involvement in the conspiracy during his testimony at trial when he testified that the did not manufacture the methamphetamine or purchase the ingredients, there was no evidence that a conspiracy had occurred. The Appellant argues that based on the evidence, he should have been convicted of operating a clandestine laboratory, and manufacturing a controlled substance, but not conspiracy.

In contrast, the Appellee argues that while Mr. Jones testified that he had no knowledge of the Appellant placing methamphetamine precursors and material to produce the drug in his home, Mr. Jones pleaded guilty to conspiracy. The Appellee also asserts that Mr. Jones testified that he smelled some-

thing funny in his home while the Appellant was staying at his home and that a "meth lab" might be at his home. Finally, there was other circumstantial evidence introduced during trial including pictures of all the evidence seized by the West Virginia State Police, testimony by the troopers involved in the search of Mr. Jones's residence, and the testimony from Lieutenant Goff, an expert regarding the chemistry related to methamphetamine, who testified that in his expert opinion a methamphetamine was manufactured at Mr. Jones's home. Consequently, the Appellee maintains that there was sufficient circumstantial evidence to sustain the Appellant's conviction.

■ The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence. *LaRock,* 196 W.Va. at 304, 470 S.E.2d at 623. As this Court has further explained:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ Moreover,

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *Guthrie,* 194 W.Va. at 663, 461 S.E.2d at 169.

■ Utilizing the foregoing standards, we now examine whether there was sufficient evidence to support the Appellant's conviction, keeping in mind that all the evidence must be viewed in the light most favorable to the prosecution. *Id.* As previously mentioned, in order to convict the Appellant of conspiracy to manufacture methamphetamine, the Appellee had the burden of proving that the Appellant agreed with others to commit the crime of manufacturing methamphetamine, and that some overt act was taken by a member of the conspiracy to effect the object of the conspiracy, which was the manufacture of methamphetamine. *See Burd,* 187 W.Va. at 416, 419 S.E.2d at 677, Syl. Pt. 3.

The Appellee offered evidence that both the Appellant and Mr. Jones purchased precursors or items that are used in the manufacture of methamphetamine. Additionally, Mr. Jones testified that the Appellant was staying at Mr. Jones's home, that Mr. Jones had smelled something funny in his home while the Appellant was staying there, and that a "meth lab" might be at his home. There was other circumstantial evidence introduced during the Appellant's trial including pictures of all the evidence seized by the West Virginia State Police, testimony by the troopers involved in the search of Mr. Jones's residence, and the testimony from Lieutenant Goff that in his expert opinion methamphetamine was manufactured at Mr. Jones's home. There was also a stipulation that at least one of the samples obtained during the search of Mr. Jones's home was methamphetamine. Even though Mr. Jones testified at trial that he was not involved in the conspiracy, he also testified that he had pleaded guilty to the conspiracy. Conse-

quently, given that "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt[,]" there is overwhelming evidence to sustain the jury's verdict convicting the Appellant of conspiracy. Syl. Pt. 3, in part, *Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169. Thus, the circuit court did not err in denying the Appellant's Motion for Judgment of Acquittal.

### III. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Calhoun County is affirmed.

Affirmed.